**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 390, United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local Union No. 195, and International Chemical Workers Union, Local No. 557**

v.

**QUANTUM CHEMICAL CORPORATION/USI DIVISION.**

No. 1:92–CV–0355.

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 1, 1992.

Robert W. Rickard, Port Arthur, Tex., for plaintiffs.

Robert J. Hambright, Orgain Bell & Tucker, Beaumont, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

Plaintiffs, the three international unions, seek a temporary restraining order requiring Quantum Chemical Corp./USI Division to cease its recently implemented "on call duty" policy. They desire to preserve the status quo pending arbitration concerning the mandatory overtime provision of their collective bargaining contracts.

The agreements have been in effect among the unions and Quantum since January 1992. Quantum's alleged difficulties in obtaining the number of overtime workers it stated it needs led management during negotiations to insist on the following contract provision, which the unions accepted: "Because of the absolute necessity of keeping the Plant in continuous production, employees will be required to work overtime."

The court heard testimony to the effect that management had at first proposed a provision markedly different from prior overtime practice and it would require union members to carry electronic pagers and be subject to "on call duty" on weekends. All three unions rejected this proposal. Nothing concerning electronic pagers or a departure from the prior overtime policy is contained or referred to in the language of any of the contracts. Nevertheless, Quantum contends that all parties "understood" that the language of the provision eventually agreed to and quoted above gave management the right to institute "on call duty" if it continued to have difficulties filling overtime.

In April 1992, citing the continuing difficulties in obtaining overtime work done, management unilaterally initiated an "on call duty" policy. Union members are now required to be "on call" on a rotating basis each weekend, from the end of the day shift at 4 p.m. on Friday until the commencement of the day shift at 7 a.m. on Monday. During that time, each employee "on call" must carry an electronic pager at all times. Failure to respond to a page within twenty minutes, or, once responding, to report for duty within "a reasonable time," subjects the employee to disciplinary action, up to and including discharge.

The unions began grievance procedures leading to arbitration as per their contracts. One claim is ripe for arbitration; the others will be ripe within the next few days. All parties agree that the dispute is subject to binding arbitration.

Pending the arbitrator's decision, the unions have presented testimony showing the harm suffered by employees under Quantum's continuing "on call duty" policy.

Electrician Robert Hearne testified that he has been prevented from attending to his property and livestock in Colmesneil, Texas, while "on call" due to the limited geographic range (20 to 40 miles) of the pager he is required to carry. Pipefitter John F. Abraham can no longer pursue his avocation as a scuba diving instructor on the weekends while "on call," and cannot plan any activities in advance as the "on call" roster is not posted until late in the week. Boilermaker John Calhoun is "on call" virtually every weekend due to the

small size of his work unit, making it difficult for him to attend to his wife, who is hospitalized with a serious blood disorder, and impossible for him to maintain and enjoy his property at Toledo Bend Reservoir and to participate in the usual outdoor activities that make up his family life. Larry Conkle's ability to perform his duties as father and husband has been continuously compromised: the limited range of the pagers and the threat of disciplinary action by responding to a call beyond an unknown "reasonable time" have forced him to miss a father/son picnic sponsored by his son's youth ministry program at the Baptist church in Kirbyville, a planned parent orientation with his stepson at Southwest Texas State University, and weekend activities with his family at Toledo Bend. (Affidavits of Hearne, Abraham, Calhoun and Conkle)

Quantum's sole witness, Larry Girard, could (or would) not say what was meant by a "reasonable time" for a paged employee to report for duty. This, despite Quantum's notice that such failure could result in various forms of disciplinary action directed to an offending employee, including dismissal.

In each of these instances, an employee's off-duty activities have been severely restricted in the uncompensated service of the employer's needs. That most precious and most perilous of all mortal assets, time, and the freedom to utilize what little time we have outside of the pursuit of our daily bread—to loaf, fish, watch football, have a drink at the local bar, play with the children—has been eaten away, never to be regained. Time is our most valued asset, perhaps because it is so irreplaceable. No order of this court nor arbitral award favoring the unions in this dispute can restore the time lost and the experiences foregone of the employees who testified today.

■ This court cannot and shall not rewrite the bargaining agreements in question. It may issue injunctions in order to preserve the status quo pending arbitration of a labor-management dispute if the absence of such an injunction would render arbitration of the union's challenges meaningless and if the traditional requirements of equity are met. *Local Union 733 of IBEW v. Ingalls Shipbuilding*, 906 F.2d 149, 152 (5th Cir.1990); *Independent Oil and Chemical Workers of Quincy, Inc. v. Procter & Gamble Manufacturing Co.*, 864 F.2d 927, 931 (1st Cir.1988); *Lever Bros. Co. v. International Chemical Workers Local 217*, 554 F.2d 115 (4th Cir. 1976). *See, generally, Boys Markets, Inc. v. Retail Clerks Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

Arbitration is rendered meaningless "only if any arbitral award in favor of the union would fail to undo harm occasioned by the lack of an injunction to preserve the status quo pending arbitration." *Ingalls* at 152. *E.g., Local Lodge No. 1266, International Association of Machinists and Aerospace Workers, AFL–CIO v. Panoramic Corp.*, 668 F.2d 276 (7th Cir.1981), (new management terminates workers' employment pending arbitration); *United Steelworkers of America v. Fort Pitt Steel Casting*, 598 F.2d 1273 (3rd Cir.1979) (employer threatens to terminate premium payments on workers' health insurance pending arbitration); *Lever Bros.*, 554 F.2d 115 (company plans to relocate operations pending arbitration).

Defendant mistakenly cites *Independent Oil and Chemical Workers of Quincy, Inc. v. Procter & Gamble Manufacturing Co.*, 864 F.2d 927 (1st Cir.1988) for the proposition that injunctive relief is improper in situations not involving actual loss of jobs. The court in fact held that the "disruption of workers' lives and habits" is not "sufficient harm on which to bottom injunctive relief." *Id.* at 932. In this case, management's unilateral inauguration of a new "work-team" policy required a change in the workers' schedules, that is, a *change* in when off-duty time would be taken, and not an effectual *loss* of any meaningful off-duty time, as is the situation before us. *Procter & Gamble* is inapposite on the facts.

■ The testimony before this court has adequately shown that the harm done to union members under Quantum's "on call"

policy is the ongoing, uncompensated and irreparable loss of these workers' off-duty time and freedom which no arbitral award can restore or replace. Time lost is forever gone.

The court finds that the unions have met the other factors required by equity. While there is some dispute as to what the parties understood by the language of the bargaining agreements concerning overtime, it is facially clear that the agreements contain nothing indicating a drastic change from Quantum's prior overtime policy. Furthermore, Quantum has several alternatives under the agreements to the current "on call duty" policy that will avoid any potential economic loss. Finally, and for the same reason, "safety" concerns can be met to avoid any danger to the public interest.

Accordingly, plaintiff unions motion for a temporary restraining order is GRANTED, and its application for a temporary injunction will be set for hearing within ten (10) days.